BUCHANAN, Appellant,

v.

GENEVA CHERVENIC REALTY, Appellee.

[Cite as *Buchanan v. Geneva Chervenic Realty* (1996), 115 Ohio App.3d 250.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17692.

Decided Oct. 9, 1996.

*Frances W. Houk,* for appellant.

*Charles E. Ticknor* and *Anne Eckhart Hadden,* for appellee.

———

SLABY, Judge.

Plaintiff-appellant, Deborah Buchanan, appeals from the entry of summary judgment in favor of defendant-appellee, Geneva Chervenic Realty, in her lawsuit against it for misrepresentation and fraud in the sale of a home to appellant. We affirm.

On July 19, 1991, appellant entered into a contract to purchase a home from James and Sandra Costello ("the sellers") for $115,000. The realty company through its agent, Terry Aikens, acted as the sellers' real estate agent in this transaction.

The purchase contract contained an "inspection/as is" clause, and provided appellant with fourteen days to inspect the property and notify the sellers of any defects to be corrected. If problems were found, the sellers would have the option of either making the corrections or voiding the purchase agreement. The purchase agreement further stated:

"Buyer may waive any defects and accept the property as is. If Buyer does not inspect, inspection is waived and Buyer takes the property in its present as is condition. After inspection and correction, if any, Buyer accepts property in its present as is condition."

Appellant hired a professional home inspector, William Herman, and accompanied him during the home inspection on July 25, 1991. Overall, the inspector found that the property was in average condition for a twelve-year-old home. Appellant identified three problems that she requested the sellers to correct: a small gas leak in the furnace, a roofing truss in the attic, and a broken sliding door. The sellers agreed to make the requested repairs and on July 30, 1991, appellant executed an addendum to the original purchase contract stating that she had inspected the property and found its condition to be satisfactory.

On September 15, 1991, appellant and her two children moved into the home. Appellant stated she then discovered that there was substantial damage to the floor covering and a large yellow spot on a wall from animal urine, that the basement crawl space had been used as a litter box, causing unbearable odors throughout the house, and that there were severe water problems in the basement. The animal problems were of particular concern to appellant because, prior to purchasing the home, she had informed agent Aikens that her daughter had allergies and she needed to purchase "a clean home." She specifically inquired as to whether there were any pets and was told that there were none. She later learned that the sellers supposedly had several cats and an old English sheepdog.

In July 1993, appellant filed a complaint against the home inspector, the sellers, and the realty company, alleging (1) fraudulent misrepresentation concerning a basement water problem, (2) fraudulent concealment of the crawl space being used as a litterbox for cats, (3) fraudulent concealment of stains on the carpets and walls caused by pet urine, (4) fraudulent concealment of a plumbing leak, (5) fraudulent concealment of a furnace problem, (6) fraudulent concealment of a roof leak, and (7) negligence in recommending a home inspector. Appellant claimed

that she had incurred $50,000 in damages in order to correct problems with the home.[1]

In 1994, the proceedings against the sellers and the realty company were stayed while awaiting the outcome of arbitration between appellant and the inspector, as required by a clause in his inspection contract. A year later, appellant dismissed the action against the inspector without arbitrating the claim, and proceeded against the remaining defendants. The realty company moved for summary judgment, which was granted for all of the claims.[2] Appellant raises three assignments of errors on appeal concerning the alleged fraudulent misrepresentation and concealment, pertaining only to the basement water problems and the damages allegedly caused by the presence of pets:

### Assignment of Error I

"The trial court erred in finding that [the realty company] could not be held liable for false representations without evidence that it had actual knowledge that the representations were false."

### Assignment of Error II

"The trial court erred in finding that the damage caused by the presence of pets in the real estate purchased by Plaintiff-Appellant was open and observable for inspection; hence [the realty company was] under no duty to advise Plaintiff-Appellant of such condition."

### Assignment of Error III

"The trial court erred in finding that the fact that the basement in said house flooded in heavy rain was open and observable for inspection; hence [the realty company was] under no duty to advise Plaintiff-Appellant of such condition.

■ In granting a motion for summary judgment pursuant to Civ.R. 56(C), the court must be satisfied that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192–1193. This court reviews a grant of summary judgment *de novo*, construing the evidence and inferences to be drawn from the

---

1. Some of the expenses appellant submitted were for replacing the carpeting in the entire house (except the family room, which had newer carpeting), a new kitchen floor, a new furnace, ductwork cleaning, kitchen faucet, electrostatic air filter, a Kirby vacuum, a whole-house water treatment system, cementing gravel floor of crawl space, waterproofing the basement, and installing a whole-house air conditioning system.

2. Portions of the case against the sellers remain pending.

evidence in a light most favorable to the nonmoving party. *Nottingham v. Akron Bd. of Ed.* (1992), 81 Ohio App.3d 319, 321, 610 N.E.2d 1096, 1097.

The doctrine of *caveat emptor* governs real property sales transactions in Ohio and relieves a vendor of the obligation of revealing every imperfection that might exist in a residential property. *Layman v. Binns* (1988), 35 Ohio St.3d 176, 177, 519 N.E.2d 642, 643–644. Without such a doctrine, nearly every sale would be subject to litigation by disappointed buyers. *Id.* The Supreme Court has specified the circumstances under which *caveat emptor* precludes recovery in an action by a purchaser for a structural defect in real estate: "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Id.* at the syllabus, citing with approval and following *Traverse v. Long* (1956), 165 Ohio St. 249, 59 O.O. 325, 135 N.E.2d 256. A vendor does have a duty "to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection." [3] *Id.* at 178, 519 N.E.2d at 644.

In order to facilitate our review, we shall address the assignments of error in reverse order.

## I

In her second and third assignments of error, appellant argues that the water in the basement and the pet damage were latent defects that were not open and observable upon inspection, and, therefore, the realty company had a duty to disclose these conditions. We agree with the trial court and find that the complained-of conditions were not undiscoverable, latent defects, but were open and observable upon diligent inspection.

Appellant does not dispute that she had unimpeded access to the premises and had every opportunity to conduct a thorough investigation. She visited the home at least four or five times and had the home professionally inspected. Additionally, her mother, her brother (who is a real estate agent), and both of her children also visited the premises.

Appellant claims that she was not able to observe any water in the basement because of the hot, dry weather that summer. Then, the first week after she took possession, there was a heavy rainstorm resulting in wetness on three of the basement walls and water on the floor in a corner and around the perimeter.

---

3. R.C. 5302.30, effective July 1, 1993, now also requires sellers to complete a property disclosure form to provide information on the physical condition of the structure of the property and to inform purchasers of any material defects that are within the actual knowledge of the transferor.

Appellant also states that she could not examine the crawl space area because it was closed off. Upon moving in and removing the covering, she found that the gravel floor of the crawl space emitted a "terrible odor," supposedly because cats had used this area as a litter box. She maintains that the pet odors and damage were "concealed" because, at the time of her inspections, the windows were always open, ceiling fans were operating (the house didn't have central air conditioning), and there were two potpourri-scented Airwick air fresheners in the basement. Likewise, she claims the pet stains under the carpeting and linoleum were hidden from view until the floor covering was removed, and she did not see the stain on the wallpaper because a couch was in front of it.

Appellant had ample notice of potential water problems in the basement from the sellers' disclosure form, which twice stated that a current water problem existed and caused "seepage in NE corner during heavy rain storms." Additionally, the home inspection report found symptoms of "water/moisture" in the basement in the form of visible efflorescence and stains. The report further indicated that "occasional seepage," [4] "damp walls," and "mildew/mold formation" would be "likely/possible in the future" and suggested that she contact a professional engineer for a more thorough analysis.

Appellant was also aware of the existence of the crawl space beneath the family room, and was never denied access or told that she could not remove the covering to inspect it further. The entrance to the crawl space was covered with a mesh, chicken-wire type of covering, held in place by wires. The inspector was able to shine his flashlight into the area and look at the gravel floor through the one-inch honeycomb openings. He did not notice any unusual odors or see any evidence that it had been used as a litter box.

The stains found under the floor covering and the damaged wallpaper constitute imperfections in cosmetic features of the home, not *material defects* to the *structure* or integral systems of a home that mandate specific disclosure. See *Layman v. Binns*, 35 Ohio St.3d at 177–178, 519 N.E.2d 642, 643–645.[5] We will not hold every homeowner whose pet may have had an "accident" responsible for residual stains that might remain underneath the carpeting and padding. Appel-

---

**4.** "Seepage" is defined in the home inspection report as a condition that "would rarely be expected to build water more than an inch or so deep." This corresponds to the amount of water appellant described in the basement after the heavy rainstorm. On September 25, 1991, ten days after taking possession, appellant signed a contract with a waterproofing company for more than $5,000 in services. No evidence is presented as to whether other options to solve this alleged problem were considered.

**5.** See, also, Jones, Risk Allocation and the Sale of Defective Used Housing in Ohio—Should Silence Be Golden? (1991), 20 Cap.U.L.Rev. 215, 238, stating that a home buyer "needs protection from mistakenly purchasing a house that the reasonable man would consider intolerably defective, not protection from making a bad bargain."

lant could have easily peered behind the couch and looked at the carpeting more closely.

Appellant, who is a professional housecleaner, had full access to the premises and was free to thoroughly examine the property prior to finalizing the purchase. The fact that she did not notice or become aware of certain problems until after she moved in does not transform them into latent defects. Appellant cannot now attempt to hold the sellers and the realty company responsible if she was not as diligent as she should have been in protecting her interests. See *Traverse v. Long,* 165 Ohio St. at 252, 59 O.O. at 326–327, 135 N.E.2d at 259.

Appellant's second and third assignments of error are overruled.

## II

In her first assignment of error, appellant asserts that the statements of the realty company's agents constituted fraudulent misrepresentation, whether or not the agents had actual knowledge that the statements were false.

The doctrine of *caveat emptor* cannot be used to protect a vendor if the buyer can prove fraud. *Layman v. Binns,* 35 Ohio St.3d at 177, 519 N.E.2d at 643–644. Likewise, this court has held that an "as is" clause cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent concealment. *Tipton v. Nuzum* (1992), 84 Ohio App.3d 33, 39, 616 N.E.2d 265, 269; *Kaye v. Buehrle* (1983), 8 Ohio App.3d 381, 383, 8 OBR 495, 497, 457 N.E.2d 373, 376.

In order to prove fraudulent misrepresentation, a buyer must establish *each* of the following elements:

"(1) a representation or, where there is a duty to disclose, concealment of a fact,

"(2) which is material to the transaction at hand,

"(3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(4) with the intent of misleading another into relying upon it,

"(5) justifiable reliance upon the representation or concealment, and

"(6) a resulting injury proximately caused by the reliance." *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus; *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407.

When appellant first visited the home at an open house and asked the agent on duty that day whether pets were involved, the answer implied that there were none: "Pets, no pets, this home is immaculate." Later, when appellant specifical-

ly informed agent Aikens about her need for a pet-free home, she claims that he told her there were "no pets." He also told her that the crawl-space was used "strictly for storage." During the home inspection, appellant and the inspector were surprised to see a cat and a litter box in the basement, and a gerbil or hamster in the family room. Agent Aikens then told her he believed "they recently got a kitty." Additionally, when asked about the seepage in the basement, the agent told her that the sellers believed that it was caused by a drainage problem and that he believed the sellers had repaired a downspout, which should take care of the problem.

Construing the facts in a light most favorable to appellant, it appears as if the agent made several inaccurate and misleading statements in an attempt to culminate a sale. Whether he made the representations knowing that they were false, or in a reckless disregard of their truth or falsity, the effect was the same. A realty company and its agents have a duty not to assert as fact matters as to which they have no knowledge. See *Pumphrey v. Quillen* (1956), 165 Ohio St. 343, 59 O.O. 460, 135 N.E.2d 328, paragraph one and two of the syllabus. Making such uninformed, erroneous and deceptive statements clearly constitutes an element of fraudulent misrepresentation. *Id.*

However, justifiable reliance is also an essential element of a cause of action for fraudulent misrepresentations. A buyer should be able to reasonably rely upon the representations of a real estate agent. See *Brewer v. Brothers* (1992), 82 Ohio App.3d 148, 152, 611 N.E.2d 492, 494–495. Nevertheless, the facts in this particular case indicate that such reliance was not justified. During the home inspection, only six days after making the purchase offer, appellant was alerted to the fact that animals were on the premises. Appellant required the sellers to correct three other problems before entering into the sales agreement; yet she did not make any further inquiry concerning the animals or request any accommodations on account of the presence of the pets, even though she claimed that this was a paramount concern. Furthermore, appellant's reliance on the agent's vague statements concerning the status of the water seepage problem was not reasonable in light of the disclosure information provided by the sellers and the home inspection report.

Despite the agent's misrepresentations, sufficient information was readily apparent that should have put a reasonably prudent person on notice of possible problems necessitating further diligent inquiry. See *Tipton v. Nuzum* (1992), 84 Ohio App.3d 33, 38, 616 N.E.2d 265, 268–269; see, also *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 90, 18 OBR 403, 405-406, 481 N.E.2d 1193, 1195–1196. Appellant's claim for fraudulent misrepresentation must fail.

Appellant's first assignment of error is overruled.

Based on the foregoing, we conclude that the trial court properly granted summary judgment as to each count of appellant's complaint. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and REECE, J., concur.