OPINION
John and Brenda Harpest appeal from a judgment of the Miami County Court of Common Pleas, which granted summary judgment in favor of David and Elizabeth Parrott on the Harpests' fraud claim.
The facts underlying the dispute between the Harpests and the Parrotts are as follows. In early 1998, the Parrotts listed for sale the house located at 20 West Elm Street in Tipp City and completed a residential property disclosure form as required by R.C. 5302.30("the disclosure form"). At that time, the Parrotts had not lived in the home for several years; rather, Randy Holland had lived in the home pursuant to a land contract which was subsequently abandoned. The Parrotts had completed substantial renovations to the house both before and after Holland lived there, and their realtor had advertised the house as "completely remodeled and updated." When the Harpests expressed interest in the house, they received a copy of the residential property disclosure form. Mrs. Harpest also looked through the house herself and contracted to have the house inspected for termites. The inspector found no evidence of termites, and no other inspections were conducted. When Mrs. Harpest toured the house, the access panel to the crawl space was nailed closed and lay underneath wall to wall carpeting; the access door to the attic was also nailed closed and could be reached only by climbing a ladder. Because of these limitations on access, the Harpests purchased the house on February 27, 1998, without having looked in either the crawl space or the attic.
After the Harpests purchased the house, they discovered that the drains for the kitchen sink, bathroom tub, and washing machine were severely rusted or detached and were draining into the crawl space. They also discovered evidence of extensive fire damage in the attic. On the disclosure form, the Parrotts had indicated that they knew of no current water leakage, water accumulation or other defects with the crawl space of the house and that they knew of no material problems with the roof or other structural components of the house. The Parrotts also left blank a section of the form requiring disclosure of any other known material defect in the property.
The Harpests filed a complaint for fraud on April 9, 1998. After a period of discovery, the Parrotts moved for summary judgment. The trial court granted the motion for summary judgment on April 20, 1999. In its decision, the trial court found that the doctrine of caveat emptor barred the Harpests' claim because the undisclosed defects could have been discovered upon reasonable inspection of the house. In so holding, the trial court interpreted the disclosure requirements of R.C. 5302.30 to apply only to latent defects.
The Harpests raise one assignment of error on appeal.
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO APPELLEES WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED AND APPELLEES WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
The Harpests make three arguments in support of this assignment of error. First, they contend that the doctrine ofcaveat emptor does not relieve a seller of the duty imposed by R.C. 5302.30 to disclose material defects. Second, the Harpests claim that a genuine issue of material fact existed as to whether a reasonable inspection would have included removal of the nailed access panels and the carpeting which restricted access to the crawl space and the attic. Third, the Harpests claim that they should not have been held to a duty to inspect the home because the Parrotts' active concealment of the defects in the house and representations about remodeling lured the Harpests into believing that inspections were unnecessary. We will address each of these arguments in turn.
The Harpests claim that the trial court erred in analyzing the interplay between the doctrine of caveat emptor and the requirements of R.C. 5302.30. Caveat emptor, meaning let the buyer beware, is a longstanding common law doctrine which applies to real property sales transactions in Ohio. The doctrine relieves a seller of residential property of the obligation to reveal every imperfection that might exist as long as the imperfections are discoverable and the buyer has had an opportunity for unhindered investigation. Layman v. Binns (1988),35 Ohio St.3d 176, 177. The rationale underlying caveat emptor is that, since problems of varying degree can be found in most dwellings, virtually every sale would invite litigation by a disappointed buyer if no duty were imposed upon the buyer to make inquiry and examination. Id. at 177. Caveat emptor precludes recovery by a buyer of real estate where three conditions are satisfied: 1) the defective condition is open to observation or discoverable upon reasonable inspection; 2) the purchaser has had an unimpeded opportunity to examine the property; and 3) there has been no fraud on the part of the seller. Id. at 177. The seller does have a duty, however, to reveal defects of which he has knowledge that are not open to observation or discoverable upon reasonable inspection. Id. at 178, citing Miles v. McSwegin
(1979), 58 Ohio St.2d 97.
In 1993, the legislature enacted R.C. 5302.30, which requires sellers of residential property to complete a disclosure form about the property. The form requires the seller to disclose the following:
 [M]aterial matters relating to the physical condition of the property to be transferred, including, but not limited to, the source of the water supply to the property; the nature of the sewer system serving the property; the condition of the structure of the property, including the roof, foundation, walls, and floors; the presence of hazardous materials or substances, * * *; and any material defects in the property that are within the actual knowledge of the transferor.
R.C. 5302.30(D). The disclosure form also provides that it is not a substitute for any inspections and that the buyer is encouraged to obtain his or her own professional inspection. R.C.5302.30(D). The statute requires sellers to make disclosures in good faith, which is defined as "honesty in fact." R.C.5302.30(A)(1) and (E)(1).
In the trial court's analysis of the relationship between R.C. 5302.30 and the doctrine of caveat emptor, it concluded that the "statute does not expand the doctrine of caveat emptor, but merely codifies it." In so holding, the trial court limited the applicability of the statute's disclosure requirements to latent defects. The Harpests contend that the trial court erred in interpreting the property disclosure requirements this narrowly.
We addressed this issue in Hull v. Dietrich (Dec. 31, 1997), Miami App. No. 97-CA-32, unreported, in which the seller of a home with well water failed to disclose the strong sulfur taste and smell of the water. In Hull, we held that a seller of residential property who fails to disclose a material defect of which he has actual knowledge has committed fraud. Id. In reaching this conclusion, we reasoned that an action for fraud may be based "upon failure to fully disclose facts of a material nature where there exists a duty to speak" and that R.C. 5302.30 creates a legal duty to disclose. Id., citing Layman v. Binns (1988),35 Ohio St.3d 176, 178. Because the existence of fraud negates an essential element of the doctrine of caveat emptor, we concluded that evidence of fraud on the part of the seller renders caveatemptor "an impotent defense." Id. at 10.
Applying the Hull rationale to the facts at hand, we conclude that the trial court erred in granting summary judgment in favor of the Parrotts. Construing the evidence most strongly in favor of the Harpests, there were genuine issues of material fact as to whether the Parrotts had had actual knowledge of the plumbing problems and the fire damage and whether those defects were material. In fact, the trial court expressly found that the Parrotts had had actual knowledge of the defects. R.C. 5302.30
required the Parrotts to disclose those defects, and their failure to do so constituted fraud and precluded them from relying oncaveat emptor as a defense.
The trial court concluded that the Harpests could have discovered the alleged defects upon reasonable inspection of the property, and it relied on this determination in concluding the R.C. 5302.30 had not required disclosure of the defects. In other words, the trial court concluded that R.C. 5302.30 mandates only the disclosure of latent defects. The plain language of the statute, however, gives no indication that the legislature intended for it to be read so narrowly. R.C. 5302.30(D) provides that the disclosure form "constitutes a statement of the conditions of the property and of information concerning the property actually known by the transferor." (Emphasis added.) In our view, this language cannot reasonably be construed to mean "actually known by the transferor and not capable of being discovered by the buyer upon reasonable inspection." Likewise, although the disclosure form cautions buyers that the form is not a substitute for inspections and encourages buyers to obtain professional inspections, we are not inclined to construe this language as limiting the scope of the disclosure requirement to those defects that an inspection would not reveal. Our interpretation of the statute is further supported by the fact that R.C. 5302.30(F)(1) expressly shields a seller from liability for "any error in, inaccuracy of, or omission of any item of information required to be disclosed" that was not within the seller's actual knowledge but does not expressly preclude liability for failure to disclose patent defects. Moreover, the statute's requirement that seller's disclose defects in good faith, meaning honesty in fact, would seem to be inconsistent with an interpretation that would allow sellers to omit obvious defects when completing the disclosure form. Accord Rose v. Zaring Homes,Inc. (1997), 122 Ohio App.3d 739, 749, fn. 3 (concluding that R.C.5302.30 modified common law rule of caveat emptor to further protect buyers); Buchanan v. Geneva Chervenic Realty (1996),115 Ohio App.3d 250, 255, fn. 3 (recognizing that disclosure requirements of R.C. 5302.30 are broader than common law requirements); Van Camp v. Bradford (C.P. 1993), 63 Ohio Misc.2d 245,254-255 (stating that R.C. 5302.30 took "bold step toward ameliorating the harsh application of caveat emptor"); Montgomeryv. Proper (Feb. 14, 1997), Huron App. No. H-96-019, unreported (holding that, in light of R.C. 5302.30, caveat emptor now applies only to latent conditions not covered by disclosure requirements);Akl v. Maher (Dec. 30, 1996), Lucas App. No. L-96-125, unreported (R.C. 5302.30 eliminated the distinction between patent and latent defects for purposes of disclosure). But, see, Osinski v. Kornja
(Feb. 19, 1998), Cuyahoga App. No. 72129, unreported (holding that nondisclosure of defects did not rise to the level of fraud because defects were not latent).
The trial court relied on cases that do expressly or implicitly interpret R.C. 5302.30 as applying only to latent defects, and we recognize that there are divergent views on this issue. See Good v. McElhaney (Sept. 30, 1998), Athens App. No. 97 CA 41, unreported; Belluardo v. Blankenship (June 4, 1998), Cuyahoga App. No. 72601, unreported; Costaras v. Serle (Jan. 21, 1998), Summit App. No. 18387, unreported. We observe, however, that there were some notable distinctions in those cases, including "as is" purchase contracts in Good and Belluardo, lack of actual knowledge of the defects on the part of the seller inGood, and knowledge on the part of the buyer of facts sufficient to put a reasonably prudent person on notice of problems necessitating further inquiry in Belluardo and Costaras. We also note that the sale of property at issue in Buchanan v. GenevaChervenic Realty, supra, on which the trial court also relied, occurred prior to the effective date of the disclosure requirements set forth in R.C. 5302.30. As noted supra,Buchanan recognizes in a footnote that R.C. 5302.30 "now also requires sellers to complete a property disclosure form to provide information on the physical condition of the structure of the property and to inform purchasers of any material defects that are within the actual knowledge of the transferor." Id. at 255, fn. 3.
Because we hold that the disclosure requirements of R.C.5302.30 are not limited to latent defects, we find that the trial court erred in granting summary judgment to the Parrotts on the basis that the undisclosed defects were "open to observation and discoverable upon reasonable inspection."
 The Harpests also argue that there was a genuine issue of material fact as to whether the problems with the plumbing in the crawl space and the fire damage in the attic were, in fact, discoverable upon reasonable inspection. We agree. Notwithstanding our conclusion that R.C. 5302.30 applies to all material defects in residential property, the effect of our so concluding merely "renders caveat emptor `an impotent defense.'" Hull, supra, at 10. In a fraud action — which this is — the plaintiff must still establish his justifiable reliance on the defendant's misrepresentation or concealment. See Rose, supra, at 743-4. Hence, whether these defects were discoverable upon reasonable inspection remains a material issue of fact.
A trial court may grant summary judgment only if it appears from the evidence "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." Civ.R. 56(C).
With respect to the crawl space, it was undisputed that the access panel was "in the side spare bedroom in the closet," that it had been nailed closed, and that padding and carpet lay on top of the panel. The prior occupant, Holland, stated that he had nailed the panel closed and had installed the carpet in order to keep his children from accessing the crawl space. Mrs. Parrott acknowledged that the carpet had not been "loose," meaning that it could not simply be lifted in order to access the crawl space. Mrs. Parrott testified that she told her realtor where the access panel was and that prospective buyers could "pull the carpet up if they wanted," but there was no evidence that the realtor conveyed that information to the Harpests. Mrs. Harpest stated in her affidavit that, although Mrs. Parrott had told her of the location of the crawl space, the carpeting discouraged her from accessing the crawl space.
In our judgment, construing this evidence most strongly in favor of the Harpests, reasonable minds could disagree about whether the crawl space was open to observation and whether a reasonable inspection of the home would have included the removal of the carpet and access panel so as to look inside the crawl space. The trial court oversimplified the issue when it observed that, "[o]nce the Plaintiffs decided to look in the crawl space, they had no trouble doing so. They gained access by cutting the carpet in the closet and prying open the nailed floor boards which comprise the door into the crawl space." The physical ease with which the Harpests pulled up the carpet and loosened the access panel after they had purchased the home was not particularly relevant to the issue of whether someone who did not yet own the home would be reasonably expected to take those steps as part of an inspection.
The existence of a genuine issue of material fact about whether the Harpests should have discovered the fire damage to the attic was a closer call. It was undisputed that the only access to the attic was from the outside of the house and necessitated the use of some type of ladder. Also, the access panel to the attic was nailed closed. Mrs. Harpest stated that these factors, the winter weather, and the Parrotts' representations that they had recently replaced the roof discouraged her from accessing the attic. Charles Ford, an inspector hired by the Harpests after they had discovered the damage, stated that the fire damage was immediately apparent upon removing the access panel and looking into the attic without actually entering the attic. In our view, the Harpests assumed a very substantial risk by failing to enter or even look into the attic before buying the home. Nonetheless, we believe that reasonable minds could differ on whether the failure to inspect the attic was unreasonable per se. As such, the trial court should not have granted summary judgment based on the Harpests' failure to inspect the attic.
Additionally, we address the trial court's finding that "the Defendants had actual knowledge of the defective conditions." It is not clear whether the trial court found that reasonable minds could only conclude that the Parrotts had had actual knowledge of the defects or whether it presumed actual knowledge only for the purpose of summary judgment. Because this is not clear, and in fairness to the Parrotts, we note that there was a genuine issue of material fact as to whether they knew of the defects. Regarding the plumbing, the previous occupant, Randy Holland, stated that he had reported plumbing problems to Mrs. Parrott and that she had acknowledged having plumbing problems with the house in the past. Mrs. Parrott claimed that she had never been in the crawl space, and Mr. Parrott stated that he had last been in the crawl space "in probably late `90." Based on this evidence, a genuine issue of material fact existed as to what the Parrotts knew at the time of the sale, if anything, about the plumbing problems in the crawl space.
With respect to the attic, David Parrott testified that, when he had looked through the attic access while installing vinyl siding on the house, the "braces on the rafter system" had looked old but not burnt. Mr. Parrott also stated that, when he replaced part of the roof to repair a leak, he had repaired charred wood around an old hot water heater vent. The Harpests' inspector testified, on the other hand, that charring was immediately apparent upon looking through the access panel and that the damage "from a substantial fire" extended from one end of the attic to the other. The inspector also testified that there was evidence that repairs had been made to the roof after the fire, particularly that new sheeting had been attached to charred roof rafters. Holland stated in an affidavit that he had noticed that a ceiling fan that the Parrotts claimed to have installed had appeared to be mounted to a charred ceiling joist and that he had discussed his observations about fire damage with the Parrotts. Based on this evidence, reasonable minds could differ as to whether Mr. Parrott had had actual knowledge of the fire damage in the attic.
The Harpests' final argument is that the Parrotts' claim that they had remodeled the house relieved the Harpests of any duty to inspect because the remodeling "served to cover up the defects" and was intended to "mislead the prospective buyer to believe that inspections were unnecessary." The undisputed evidence showed that the Parrotts had installed new cabinets, a new sink, a new counter top, a bathtub, new linoleum flooring, and a new front door. They had also carpeted and painted the front room of the house, replaced ceiling tiles, finished wallpaper, painted trim, and installed vinyl siding on the outside of the house. As such, the Parrotts did not misrepresent the condition of the house when they claimed that it had been remodeled. Moreover, we reject the Harpests' argument that the Parrotts' description of the house as "completely remodeled and updated" relieved them of all responsibility for inspecting the house. Whether any of the renovations served to conceal the alleged defects in the property does, however, bear on whether a reasonable inspection would have revealed the defects.
The assignment of error is sustained.
The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.
FAIN, J. and YOUNG, J., concur.
Copies mailed to:
Joseph P. Moore
Paul M. Courtney
Jose M. Lopez
Hon. Jeffrey M. Welbaum