DECISION AND JOURNAL ENTRY
Appellants Owen B. ("Brion") and Laura Hearty timely appeal the decision of the Summit County Court of Common Pleas which granted summary judgment to both defendants First Merit Bank, Executor of the Estate of Dorothy Taylor Woodward, and Baker Realty. We affirm.
 I.
This case arises out of the purchase by the Heartys ("the Buyers") of residential property at 174 Durward Road, Akron, from Dorothy Taylor Woodward ("the Seller"), now deceased. In September 1996, the ninety year old Seller was still residing in the fifty-year-old house, when she listed the house for sale with Baker Realty. The initial asking price was $210,000. In December of 1996, the Seller moved to an assisted living facility. The Buyers first visited the house in March 1997, and made an offer of $151,000 on March 12. After some negotiation, their offer of $161,000 was accepted and the sale closed on April 11. Days later a heavy rain produced leaking in the roof and leaking in the basement of the house.
The Buyers paid to have the roof replaced and got estimates for the needed repairs to the basement. Several months after the sale of the house, the Seller died and the Buyers filed a claim with her estate for the cost of the repairs. The estate refused to compensate the Buyers, who then filed suit for damages, alleging breach of contract and fraud by both the Seller and Baker Realty. Depositions were taken of the Buyers, Daniel McShane (a general contractor who looked over the home for the Buyers prior to their offer[1]), and Robert Baker and Patricia Fischer, agents of Baker Realty. On August 18, 1998, the trial court granted summary judgment in favor of both defendants. The Buyers now appeal, asserting that the trial court erred in granting summary judgment because there were genuine issues of material fact yet to be decided.
 II.
A. The Seller-Evidence to Support a Fraudulent Misrepresentation Claim.
It is undisputed that the only representation made by the Seller to the Buyers was by way of the Residential Disclosure Form, completed on September 22, 1996. Essentially, the only problem that the Seller noted on the disclosure form, was "Dampness at Northwest Corner of Basement." The Buyers claim that they detrimentally relied on the false information in the disclosure statement and on the Seller's fraudulent non-disclosure of material defects.
In their deposition testimony, the Buyers acknowledged that whenever they viewed the house it was empty and they had unimpeded access to all areas of the house. The following facts concerning the roof were available to the Buyers before making their offer. Brion Hearty testified that on his first visit to the house he noticed roof patch material in the yard. During this visit and prior to making their offer, the Buyers also saw a plasterer making repairs to the wall above the fireplace. They testified that when they asked realtor Patricia Fischer about the plastering, she said, "the problems have been solved." Brion testified that Fischer told him Baker Realty had contracted for the work to be done, but she could not tell him what work was done or what the cause of the problem was. Dan McShane testified that on his initial visit to the home before the offer was made he opined that the source of the damaged plaster was probably a problem with the flashing around the chimney. However, he never got up on the roof to inspect.
Shortly after the sale was completed, the Buyers discovered a caulk tube on the roof near the flashing, as well as caulking around the flashing. After the initiation of litigation, evidence surfaced that the roof and the flashing around the fireplace chimney had been repaired on December 16, 1996, approximately one week after the Seller moved out of the house. The evidence consisted of a receipt for the repair services, which noted that part of the repair would have to be done when the weather warmed up in the spring. Robert Baker and Patricia Fischer testified that they knew nothing of the repair (although Baker visited the house almost weekly after the Seller moved out, to ensure that everything at the house was in order). No evidence was presented as to who contracted for the roof repair.
The Buyers testified that the following information about the basement was available to them before they made their offer. They saw water stains on the basement walls along the entire perimeter of the basement and stains on the ceiling tile in a portion of the basement which was "finished" with a drop ceiling and paneling. They saw an interior drainage correction system ("B-Dry") along one wall and McShane told them there was a sump pump in the basement, which he said indicated there had been a water problem. Finally, the Buyers were advised that the house was in a location prone to moderate flood damage. They were offered flood insurance but declined it.
 B. Application of Law.
Effective March 19, 1993, R.C. 5302.30 requires the seller of residential property to complete a disclosure form. The disclosure is a statement of the owner's actual knowledge of current material problems with the home, including any material repairs done within the previous five years. The disclosure form contains several caveats, including: (1) unless otherwise indicated, the owner has no greater knowledge than could be obtained by a careful inspection by a potential buyer, (2) "THIS STATEMENT IS NOT A SUBSTITUTE FOR ANY INSPECTIONS. POTENTIAL PURCHASERS ARE ENCOURAGED TO OBTAIN THEIR OWN PROFESSIONAL INSPECTION" (Emphasis sic), (3) "[p]otential purchasers are advised that the owner has no obligation to update this form" and (4) if the buyers do not receive the disclosure form before making the offer, they may timely rescind the offer and retrieve their earnest money.
The Buyers' contract to purchase contained an "as is" clause, which also permitted them to conduct a timely inspection and to request the Seller to make any appropriate repairs. This clause gave the Seller the option to make the repairs or to void the purchase. The "as is" clause provided that if the Buyers failed to conduct a timely inspection, they would be deemed to have purchased the house "as is." Thus, under the contract, the Buyers had the burden to inspect the premises and to request the Seller to make needed repairs. The fact that the Seller completed a disclosure statement did not eliminate the importance of a thorough inspection. The disclosure form itself underscores this point.
Thus, this Court has held that notwithstanding the enactment of the Residential Disclosure Statute effective March 1993, the principle of caveat emptor still governs real estate transactions in Ohio. Buchanan v. Geneva Chervenic Realty (1996), 115 Ohio App.3d 250,255. Under the defense of caveat emptor, a seller will prevail against the injured buyer where (1) the defect to the premises was open to observation or upon reasonable inspection, (2) the buyer had unimpeded access to inspect the premises and (3) there was no fraud. Layman v. Binns (1988), 35 Ohio St.3d 176, syllabus. See also, Kaye v. Buehrle (1983), 8 Ohio App.3d 381,383.
As to the first condition, the Buyers argue that the problems with their house were latent and undiscoverable by reasonable inspection, imposing on the Seller a duty to disclose the defects. However, this Court found in Black v. Cosentino (1996), 117 Ohio App.3d 40,45 that the cause of the defect, the underlying problem, does not have to be open and obvious. If the defects are open and obvious (here the plaster repairs and the basement "dampness" and water stains), the buyer is on notice to make further inquiry as to the underlying problem. Id. After the instant sale the Buyers conducted an inspection and discovered the problems in the basement and the roof.
As to the second condition, the Buyers here admitted that they had unimpeded access to examine the house themselves and for a further inspection of the problem and/or repairs if they so desired.
Thus, to prevail against the Seller in the instant case, the Buyers must establish fraudulent misrepresentation by proving each of the following elements:
 (1) a representation or, where there is a duty to disclose, concealment of a fact,
(2) which is material to the transaction at hand,
 (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (4) with the intent of misleading another into relying upon it,
 (5) justifiable reliance upon the representation or concealment, and
 (6) a resulting injury proximately caused by the reliance.
Black, 117 Ohio App.3d at 44.
 To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id. at 293. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
An appellate court reviews an award of summary judgment denovo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Any doubt must be resolved in favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
Where the non-moving party would have the burden of proving all of a number of elements in order to prevail at trial, the moving party in the summary judgment motion may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. See e.g., Stivison v. Goodyear Tire Rubber Co. (1997), 80 Ohio St.3d 498, 499. If the moving party meets this burden of proof, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. Dresher, 75 Ohio St.3d at 293.
The Buyers claim that Seller's non-disclosure of the roof repairs was fraudulent, in that Seller had the obligation to disclose material defects or repairs on the disclosure form. Even assuming that the Seller was the person responsible for having the roof repairs done, she was under no duty to update the form. The form itself advises potential buyers that there is no duty of the seller to update the form. R.C. 5302.30 only requires that the disclosure statement be an accurate statement of the seller's knowledge of the condition of the house, as of the date the form was signed. The Buyers should have been alerted to the possibility that the disclosure statement might not still be accurate six months after it was signed.
As to the fraudulent misrepresentation claim, the defendant estate, in its summary judgment motion, pointed to facts in evidence which tend to show that the Buyers could not prevail on the elements of the Seller's knowledge that her representations were false, her intent to induce reliance on that misrepresentation, or the Buyers' justifiable reliance on the Seller's representations. As to the elements of knowledge and intent, the Buyers offered no evidence, but merely pointed to the discrepancy between the information in Seller's disclosure statement and the actual condition of the house. Once challenged on these elements by defendant estate's summary judgment brief, the Buyers had the burden to point to evidence indicating that there was a genuine issue of material fact as to each of these elements. This they failed to do.
The Buyers also cannot prevail on the element of justifiable reliance. The disclosure statement was nearly six months old when the Buyers first saw it, but they never asked for it to be updated, or whether any material changes had occurred to render the statements therein inaccurate. The Buyers saw evidence of problems with the roof which were inconsistent with a "no problem" disclosure statement. Yet they failed to take any steps to investigate the actual condition of the roof and what repairs were being done or had been done to correct the underlying problems. The problematic conditions were easily discovered after the Buyers took possession of the house. The Buyers offer no evidence to show that they were not discoverable prior to closing.
As to the basement, the Buyers say they justifiably relied on a representation of "dampness" in one corner. In a similar case, where the seller's disclosure stated that after a rainstorm, water seeps into the basement in an area up to five feet in diameter, this Court found that the buyers were not justified in relying on the "five feet" statement as an outside limit to the problem.Costaras v. Serle (Jan. 21, 1998), Summit App. No. 18387, unreported, at 5. Rather, that disclosure, along with evidence of basement water damage, put the buyers on reasonable notice that there was a water problem in the basement that required further inspection. Id. at 6. Likewise, the Buyers here were put on notice both by the disclosure form and the evidence of water stains that there was some water problem with the basement that required their further investigation.
Given this evidence of past or current problems, the Buyers were on notice that they should (1) make further inquiry of the Seller, who was under an obligation not to make fraudulent statements, or (2) undertake a professional inspection. Tipton v.Nuzum (1992), 84 Ohio App.3d 33, 38. Since the Buyers believed that the elderly Seller was inaccessible, they should have conducted a professional inspection. Rather, they admittedly relied on the disclosure form which itself instructed them to undertake a professional inspection. "When a plaintiff claiming fraud in the sale of property has repeated opportunities to inspect the property, he will be charged with the knowledge of conditions that a reasonable inspection would have disclosed."Eiland v. Coldwell Banker Hunter Realty (1997), 122 Ohio App.3d 446,459. Viewing the facts in the light most favorable to appellants, we find that they were unreasonable in their reliance on the disclosure form regarding the condition of the house.
The Buyers claim that the trial court, in granting summary judgment, impermissibly weighed the evidence. See Jacobs v.Racevskis (1995), 105 Ohio App.3d 1, 7. They specifically challenge the trial court's conclusion that the Buyers acted "with full knowledge" of the problems in the basement and roof. The trial court concluded, after viewing the facts in the light most favorable to the Buyers, that there was sufficient evidence of problems with the roof and with the basement to put reasonably prudent buyers on notice that they needed to make further inquiry about these problems. See Tipton, 84 Ohio App.3d at 38. The trial court properly imputed to the Buyers the constructive notice that reasonably prudent buyers in the same circumstances would have known that there may be problems with the house. This is an objective standard, and applies whether or not the Buyers actually knew that there might be such problems with the house. SeeHambleton v. R. G. Barry Corp. (1984), 12 Ohio St.3d 179,181-182, for a discussion of constructive notice and the "reasonably prudent person" standard.
We affirm the decision of the trial court because we also find that, viewing the facts in the light most favorable to the Buyers, there was sufficient evidence of problems to put reasonably prudent buyers on notice that they needed to investigate further. The Buyers have also failed to point to evidence of the Seller's knowledge of the falsity of her representations or her intent to induce reliance on any alleged misrepresentations. Thus, the trial court appropriately granted summary judgment in favor of the estate.
 III.
A. Baker Realty — Facts in Evidence Regarding Fraudulent Misrepresentation
The Buyers claim that they detrimentally relied on false representations concerning the condition of the house made to them by Baker Realty, primarily by its agent, Patricia Fischer. This includes Fischer's representation that the Seller's disclosure statement was true.
The Baker Realty agents testified that the Seller read the disclosure form and filled it out based on her own knowledge. This comports with the statement on the form itself, which says "[t]he representations contained on this form are made by the owner and are not the representations of the owner's agent or subagent." The Buyers assert that Fischer represented the disclosure information to be true. Fischer testified that she answered no questions about the condition of the house, but only referred the Buyers to whatever information was on the disclosure form.
As to the roof, the Buyers claim that Fischer made a vague statement that "the problem had been fixed." At one point in his testimony, Brion admitted that he just assumed that Fischer meant that the underlying roof problems, as well as the inside plaster problems, were fixed. Both Buyers testified that Fischer did not say that the roof did not leak.
The Buyers testified that Fischer told them that all the drainpipes to the street had been replaced and that there was no dampness in the basement because of the new drainage pipes. Fischer disputes this testimony. At any rate, the disclosure form dated six months earlier stated there was dampness in the basement, and Brion admitted that he could see the dampness on the basement walls. After moving in, the Buyers experienced water problems in the basement, and excavation revealed that one drainpipe in one corner of the house was original and its tiles were broken, causing blockage.
Application of Law
The Buyers must prove the same elements of fraud listed above in order to prevail against Baker Realty. Thus, the Buyers must show that Fischer knew that her representations were false or that she spoke with total disregard of the truth or falsity of her representations, with intent to induce Buyers' justifiable reliance. Defendant Baker Realty has pointed to evidence in the record that the Buyers cannot prevail on the elements of knowing misrepresentation, the intent to deceive, or justifiable reliance.
As to Fischer's use of the disclosure statement, the form itself states that the representations contained therein are those of the Seller, not of her agents. The Buyers testified that they "believed" that the Baker realtors knew the disclosure statement was false. They acknowledged that they had no evidence that this was the case. Without evidence of such knowledge, this claim is insufficient to survive summary judgment.
As to the condition of the drainage pipes, the Buyers maintain that the one defective drainpipe was a latent problem. However, the Buyers offered no evidence to support the contention that this problem was not discoverable by observation or reasonable inspection. Brion testified that most of the drainpipes had some exposure, so that a person, such as Fischer, looking at the various exposed portions of the drainpipes would have thought, "yes, they have all been replaced." The Buyers produced no evidence that the Fischer had actual knowledge that the one drainpipe had not been replaced and was defective. Once again, the Buyers offered no evidence of intentional fraud.
The Buyers failed to inquire why the basement was damp despite the installation of an interior "B-Dry" system, a sump pump, and the replaced drainage pipes. Even assuming that Fischer fraudulently represented that the basement problems had been fixed, the Buyers were not justified in relying on an oral representation by a realtor, when the problem was open and obvious to both. Buchanan, 115 Ohio App.3d at 258, Finomore v. Epstein
(1984), 18 Ohio App.3d 88, 90, Traverse v. Long (1956), 165 Ohio St. 249,252.
As to the roof, the Buyers testified that when Fisher said, the "problem had been fixed," she could not tell them what was done or what the underlying problem was. Such sketchy information was insufficient to induce justifiable reliance on any representation that any problems with the roof had been corrected.
Despite a visible dampness in the basement and plaster damage which their own inspector attributed to a leaky roof, the Buyers claim they relied on the realtor's vague oral representations that the "problem had been fixed." Even assuming arguendo that Fischer intentionally misled the Buyers about the condition of the drainpipes and the roof, the Buyers received sufficient notice that both the basement and the roof had problems, past or present, to warrant a professional inspection before the house was purchased.
We find that the Buyers relied unjustifiably on any representations made by Fischer that contradicted the open and obvious conditions of the basement and roof. The Buyers produced no evidence that Fischer made the disputed statements with knowledge of their falsehood or indifference to their accuracy. Nor did they produce evidence that any such misrepresentations were made with the intent to deceive the Buyers. Thus, reasonable minds could come to but one conclusion, in favor of Baker Realty. Because Baker Realty was entitled to judgment as a matter of law, we find that the trial court appropriately granted summary judgment to defendant Baker Realty. Therefore, we overrule appellants' assignment of error as to defendant Baker Realty.
Having overruled the appellants' assignment of error as to both defendants, we affirm the judgment of the trial court.
 Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
 WILLIAM R. BAIRD FOR THE COURT SLABY, J.
 CONCURS
[1] Mr. McShane is a general contractor who had done work for Mr. Hearty's relatives. He testified that he is not a licensed real estate inspector. He acknowledged that he does not have the knowledge of electrical, plumbing and heating systems to properly conduct such an inspection. He testified that he usually so informs customers who ask him to "look over" a house prior to a purchase. He could not recall if he so informed the Heartys.