This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Edwin and Venelle McGlumphy, appeal from the judgment of the Summit County Court of Common Pleas that found in favor of Appellees, Neal and Cynthia Broida. We reverse.
{¶ 2} This case arises out of the purchase by Appellees of residential property from Appellants. On October 23, 1998, Appellees filed a complaint against Appellants alleging claims for fraudulent misrepresentations. Thereafter, Appellants answered and asserted a counterclaim for fraud. Appellees later moved for leave to amend their complaint; however, the trial court denied this motion. Subsequently, Appellees moved to voluntarily dismiss their complaint, pursuant to Civ.R. 41(A)(2). The trial court granted Appellees' motion, and dismissed their complaint without prejudice. On November 1, 1999, Appellees simultaneously filed a complaint, alleging fraudulent misrepresentations and negligence, against Appellants and moved to consolidate their complaint with Appellants' counterclaim. The trial court granted Appellees' motion to consolidate.
{¶ 3} On September 18, 2001, the jury trial commenced. Following Appellees' case-in-chief, Appellants moved for a directed verdict; the trial court granted Appellants' motion as it related to Appellees' negligence claim. Appellants again moved for a directed verdict after the close of all of the evidence. However, the trial court denied their motion. The jury found in favor of Appellees on both their complaint and on Appellants' counterclaim. In response, Appellants moved for a judgment notwithstanding the verdict, which the trial court overruled. Appellants timely appeal and raise seven assignments of error for review. We will begin our review with assignment of error three, as it is dispositive of this appeal.
 ASSIGNMENT OF ERROR III {¶ 4} "The trial court erred as a matter of law in failing to grant Appellants' motion for a directed verdict on the issue of fraudulent misrepresentation."
{¶ 5} In their third assignment of error, Appellants aver that the trial court erred when it denied their motion for a directed verdict on the issue of fraudulent misrepresentation. We agree.
{¶ 6} An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244,257. A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284; Rutav. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68.
{¶ 7} In accordance with Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" Furthermore, if the party opposing the motion for a directed verdict fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate.Hargrove v. Tanner (1990), 66 Ohio App.3d 693, 695. Conversely, the motion must be denied where substantial evidence exists upon which reasonable minds may reach different conclusions. Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St.2d 271, 274.
{¶ 8} In an action for fraudulent misrepresentation, the plaintiff must prove, by a preponderance of the evidence, each of the following elements:
 {¶ 9} "[(1)] a representation or, where there is a duty to disclose, concealment of a fact,
 {¶ 10} "[(2)] which is material to the transaction at hand,
 {¶ 11} "[(3)] made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 12} "[(4)] with the intent of misleading another into relying upon it,
 {¶ 13} "[(5)] justifiable reliance upon the representation or concealment, and
 {¶ 14} "[(6)] a resulting injury proximately caused by the reliance."
{¶ 15} Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. See, also, Dennison v. Koba (1993),86 Ohio App.3d 605, 610; Cardi v. Gump (1997), 121 Ohio App.3d 16, 22;Chester v. Jordan (Feb. 20, 1998), 2nd Dist. No. 97CA0007, citing Straderv. Mullane (1867), 17 Ohio St. 624, 627; Household Finance Corp. v.Altenberg (1966), 5 Ohio St.2d 190, syllabus. An action in fraud will only be found if all of the elements are present and "[t]he absence of one element is fatal to recovery." Westfield Ins. Co. v. HULS Am., Inc. (1998), 128 Ohio App.3d 270, 296.
{¶ 16} In the present case, Appellees have argued that Appellants misrepresented the extent of the water leakage in the basement on the residential property disclosure form and the existence of housing and building code violations. To facilitate review, we will separately address the water leakage in the basement and the housing and building code violations.
 1. The water leakage in the basement
{¶ 17} To support their argument, Appellees rely upon Appellants' response on the residential property disclosure form to the following question: "Do you know of any current water leakage, water accumulation, excess dampness or other defects with the basement/crawl space?" Appellants responded "yes" and further elaborated that it was "very slight at basement door if heavy rain blows in[.]" Appellees contended that the water leakage was not "very slight" as mold had begun to grow under the carpeting and behind the drywall in the basement and, therefore, Appellants had acted fraudulently.
{¶ 18} We find that Appellees had ample notice of the potential water problem in the basement based on Appellants' residential property disclosure form and from the conditions of the basement upon an inspection. Specifically, Earl Seabeck ("Seabeck"), Appellees' friend and inspector, testified that he conducted a twenty-minute inspection of the property. He further testified that he saw condensation on the pipes and on the floor and smelled a musty odor in the basement. Seabeck stated that he asked Edwin McGlumphy ("Edwin") about the smell and Edwin replied that "[they] had some water coming in around [the] hurricane door[.]" After Edwin directed him to the door, Seabeck acknowledged that he saw mold growing on the door. Seabeck conceded that he did not "pull up" the carpet for inspection purposes nor did he make any further inquiries because he found Edwin's response sufficient. Furthermore, Seabeck stated that he noticed a watermark on the wall in the great room and he inquired as to the cause of the stain. He asserted that Edwin explained that some shingles had become loose in a rainstorm and rainwater had leaked into the home and stained the wall. Additionally, Edwin testified that he told Seabeck that a problem existed as to water coming in around the hurricane door, that there were no seals on the door, and that he had installed an additional sump pump to resolve the water problem. He explained that Appellees were aware of the need for the additional sump pump and further explained that they required him to connect the additional sump pump to an electrical outlet.
{¶ 19} Appellees testified that they solely relied upon Appellants' representations as contained in the residential property disclosure form. In Costaras v. Serle (Jan. 21, 1998), 9th Dist. No. 18387, at 2, the seller's disclosure form stated that following a constant rain, some water would seep into the basement and engulf an area up to five feet in diameter, however, this court found that the buyers were not justified in relying on the "five feet" statement as the outside boundary to the problem. This court explained that the seller's disclosure statement, in conjunction with the evidence of the water damage in the basement, put the buyers on reasonable notice that a water problem existed that required further inspection. Id. at 5-6. Similarly, Appellees were put on notice that some water problem existed, which necessitated further diligent inquiry, by Appellants' disclosure statement and Seabeck's various findings in the basement. See id. See, also, Buchanan v. Geneva Chervenic Realty (1996), 115 Ohio App.3d 250,258, citing Tipton v. Nuzum (1992), 84 Ohio App.3d 33, 38, and Finomorev. Epstein (1984), 18 Ohio App.3d 88, 90.
{¶ 20} "When a plaintiff claiming fraud in the sale of property has [the] opportunit[y] to inspect the property, he will be charged with the knowledge of conditions that a reasonable inspection would have disclosed." Eiland v. Coldwell Banker Hunter Realty (1997),122 Ohio App.3d 446, 459. Although Appellees asked Seabeck to inspect the residential property at issue, we cannot say that his twenty-minute inspection was reasonable particularly in light of the fact that he discovered mold on the hurricane door and failed to follow up this discovery with more questions or a more extensive inspection. As such, Appellees cannot prove that their reliance on Appellants' residential property disclosure form was justified; therefore, Appellees' claim for fraudulent misrepresentation must fail as to the water leakage in the basement. See Burr, 23 Ohio St.3d 69, paragraph two of the syllabus.
 2. The housing and building code violations
{¶ 21} Appellees asserted that they discovered various housing and building code violations after moving into the residential property. However, after a thorough review of the record, we find that the only evidence that Appellees presented to substantiate this assertion was Seabeck's testimony merely alleging that these violations were present. There was no evidence as to which housing and building codes Appellants had violated nor evidence documenting these alleged violations. Based upon the evidence presented at trial, we find that it falls short of demonstrating the existence of any housing or building code violations. See Phillips v. Haidet (1997), 119 Ohio App.3d 322, 326, citing Kitts v.U.S. Health Corp. (1994), 97 Ohio App.3d 271, 276 (finding that absent evidence of a breach of contract, the mere allegation that a breach was possible was insufficient to support decision to disqualify counsel);Potters Bank Trust Co. v. Eckenrode Coal Co. (Nov. 19, 1992), 7th Dist. No. 92-C-27 (stating that the mere allegation in testimony as to the extraneous agreement was insufficient to establish its existence and the appellant should have presented more convincing evidence). Consequently, Appellees' fraudulent misrepresentation claim must also fail on this basis.
{¶ 22} Appellants' third assignment of error is sustained.
 ASSIGNMENT OF ERROR I {¶ 23} "The trial court erred as a matter of law in failing to grant Appellants['] motion for a directed verdict on the issue of damages."
 ASSIGNMENT OF ERROR II {¶ 24} "The trial court erred as a matter of law in failing to grant Appellants' motion for judgment notwithstanding the verdict."
 ASSIGNMENT OF ERROR IV {¶ 25} "The trial court erred as a matter of law in granting Appellees' motion to consolidate their new complaint into the existing case."
 ASSIGNMENT OF ERROR V {¶ 26} "The trial court erred as a matter of law in allowing the alternate juror to be present in the jury room during the jury's deliberation."
 ASSIGNMENT OF ERROR VI {¶ 27} "The trial court erred as matter of law in holding that Earl Seabeck was qualified to testify as an expert witness under [Evid.R.] 702."
 ASSIGNMENT OF ERROR VII {¶ 28} "The trial court erred as a matter of law in giving the jury an instruction that the proper measure of damages in this case was the cost of repairs."
{¶ 29} In light of our disposition in assignment of error three, we need not address assignments of error one, two, four, five, six, and seven, as these assignments of error are now rendered moot. See App.R. 12(A)(1)(c).
{¶ 30} Appellants' assignment of error three is sustained and assignments of error one, two, four, five, six, and seven are not addressed. The judgment of the Summit County Court of Common Pleas is reversed.
{¶ 31} The Court finds that there were reasonable grounds for this appeal.
{¶ 32} We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
{¶ 33} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
{¶ 34} Costs taxed to Appellees.
{¶ 35} Exceptions.
BAIRD, J., CONCURS IN JUDGMENT ONLY; BATCHELDER, J., CONCURS.