CEDAR DEVELOPMENT, INC., Appellant,

v.

EXCHANGE PLACE TITLE AGENCY, INC.; Commonwealth
Land Title Insurance Company, Appellee.

[Cite as *Cedar Dev., Inc. v. Exchange Place Title Agency, Inc.*, 149 Ohio App.3d 588, 2002-Ohio-5545.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 21014.

Decided Oct. 16, 2002.

Benito C.R. Antognoli, for appellant.

Steven E. Elder, for appellee.

WHITMORE, Judge.

{¶ 1} Plaintiff-appellant Cedar Development, Inc. ("Cedar") has appealed from an order of the Summit County Court of Common Pleas that granted summary judgment in favor of defendant-appellee Commonwealth Land Title Insurance Company ("Commonwealth"). This court affirms.

I

{¶ 2} Exchange Place Title Agency, Inc. ("Exchange") is a title agency located in Akron. Commonwealth is a Pennsylvania corporation in the business of selling policies of title insurance.

{¶ 3} In June 2000, Cedar owned a parcel of real estate ("the property") that it wanted to sell to the Akron Metropolitan Housing Authority ("AMHA"). Cedar and AMHA thereafter executed a purchase agreement governing the transfer of the property. One of the provisions of the purchase agreement required Cedar to deliver the following title evidence to AMHA:

{¶ 4} "Within ten (10) days following the Effective Date (the 'Delivery Period'), Seller shall deliver to Buyer the following 'Title Evidence,' to wit: (i) a title report issued by Exchange Place Title Agency, Inc. (the 'Title Company') in the form of an ALTA Form B Title Insurance Commitment ('Commitment') covering the Property, whereby the Title Company agrees to issue an ALTA Form B Owners Policy of Title Insurance ('Title Policy') in the amount of the Purchase Price at Closing, subject only to the matters ('Acceptable Exceptions') which do not adversely affect marketability of title to the Property or affect the ability of Buyer to utilize the Property as a multifamily housing development and (ii) hard copies of all exceptions to title set forth in the Title Report."

{¶ 5} Pursuant to the agreement, a commitment for title insurance ("the commitment") was subsequently issued. The commitment included a schedule listing certain clouds against the chain of title to the property, and stated that an action to quiet title would be necessary to eliminate the clouds. As a consequence, Cedar was unable to convey good title to the property to AMHA on the

intended date of closing. The closing of the sale and transfer of the property were therefore delayed.

{¶ 6} It was later determined that the clouds against the chain of title recited in the commitment did not exist. Cedar eventually contacted another title agency, which was able to provide a complete chain of title. Cedar and AMHA then completed their real estate transaction, without using the commitment.

{¶ 7} Cedar thereafter filed a complaint against both Exchange and Commonwealth, alleging causes of action for breach of contract, negligence, and negligent misrepresentation. Cedar sought damages in the amount of $22,715.59, for additional expenses incurred for the sale of the property caused by the commitment's inaccurate determination that there were clouds against the chain of title. Commonwealth filed a motion for summary judgment on the claims against it, and the trial court granted the motion. Cedar subsequently dismissed its claims against Exchange. Cedar has appealed from the trial court's order granting summary judgment in favor of Commonwealth, asserting one assignment of error.

## II

### Assignment of Error

{¶ 8} "The trial court erred as a matter of law by granting [Commonwealth's] motion for summary judgment as to [sic] genuine issues of material fact exist in this case and must be determined by jury trial."

{¶ 9} In its sole assignment of error, Cedar has argued that the trial court erred in entering summary judgment in favor of Commonwealth. Specifically, Cedar has maintained that a sufficient nexus exists between the parties such that Cedar can assert its cause of action against Commonwealth even in the absence of privity of contract. Cedar has also contended that genuine issues of material fact exist regarding whether the doctrines of apparent agency or agency by estoppel extend liability to Commonwealth for the inaccurate title search performed by Exchange.

{¶ 10} Pursuant to Civ.R. 56(C), summary judgment is proper if:

{¶ 11} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 12} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 13} The Ohio Supreme Court long ago set forth the controlling law with respect to an abstractor's liability for mistakes in conducting a title examination:

{¶ 14} "An action against an abstracter to recover damages for negligence in making or certifying an abstract of title does not sound in tort, but must be founded on contract; and the general rule is that an abstracter can be held liable for such negligence only to the person who employed him." *Thomas v. Guarantee Title & Trust Co.* (1910), 81 Ohio St. 432, 91 N.E. 183, paragraph one of the syllabus.

{¶ 15} Commonwealth has argued that, pursuant to *Thomas,* privity of contract is a necessary predicate to a successful claim against a title examiner. Cedar, on the other hand, has urged us to abandon the privity requirement and adopt the less restrictive threshold of requiring only a "sufficient nexus" between Cedar, Commonwealth, and Exchange.

{¶ 16} In support of its position, Cedar has directed us to the Ohio Supreme Court's decision in *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. In *Haddon View,* the court rejected the strict privity requirement in the context of a malpractice action against an accountant brought by investors who relied on the accountant's negligently prepared audits. The court held that "[a]n accountant may be held liable by a third party for professional negligence when the third party is a member of a limited class whose reliance on the accountant's reputation is specifically foreseen." Id. at syllabus. In reaching its conclusion, the court relied, in part, on Section 552 of the Restatement of Torts (Second), which provides:

{¶ 17} "(1) One who * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

{¶ 18} "(2) * * * [T]he liability stated in Subsection (1) is limited to loss suffered

{¶ 19} "(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

{¶ 20} "(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Haddon View*, 70 Ohio St.2d at 156, 436 N.E.2d 212, fn. 1, quoting 3 Restatement of Torts 2d (1997) 126–127, Section 552.

{¶ 21} Cedar has also cited this court's decision in *E. Ohio Gas Co. v. Kenmore Constr. Co.* (Mar. 28, 2001), 9th Dist. Nos. 19567 and 19790, 2001 WL 302818, for the proposition that when a sufficient nexus between the parties exists, a plaintiff may recover for economic losses in a negligence action even in the absence of privity. In that case, Kenmore brought a negligence action seeking recovery of economic losses from East Ohio, alleging that East Ohio negligently failed to designate the location of its underground facilities. We reversed the trial court's entry of summary judgment in favor of East Ohio, holding that Kenmore's uncontroverted assertions that a sufficient nexus existed created a genuine issue of fact for trial.[1]

{¶ 22} In the instant case, Cedar has asserted that it was foreseeable that, as the seller of the property to AMHA, it would rely on Commonwealth's representations regarding the condition of the property's chain of title. Cedar has argued that it did so rely on the faulty representations of Exchange and Commonwealth, and the closing of the sale was delayed as a result. Cedar has contended that its reliance created a sufficient nexus to overcome the absence of privity of contract and that it should therefore be able to recover from Commonwealth its economic losses caused by the delay in closing.

---

1. Kenmore advanced three theories upon which its sufficient nexus could be based: (1) statutorily imposed duties requiring utility owners to locate and mark the location of underground facilities upon notice that a contractor intends to begin construction in the area; (2) the trial court's finding that Kenmore was a third-party beneficiary of contracts between East Ohio and another defendant with whom East Ohio had contracted to mark the location of its underground utility lines; and (3) East Ohio exercised direct control and supervision over the locating of its underground facilities.

{¶ 23} We agree that Cedar's reliance on the title examination and representations in the commitment prepared by Commonwealth and/or Exchange is both reasonable and foreseeable. However, recognition of such reliance as a substantial nexus that overcomes the privity requirement in the context of abstractor liability would directly contradict the Ohio Supreme Court's syllabus and holding in *Thomas*. "[W]e are, indeed, mindful that we are an intermediate court of appeals, and we are therefore bound by Supreme Court precedent. We do not accept the * * * argument that *Thomas* has been overruled *sub silentio*, nor can we fail to follow the syllabus in *Thomas*." (Citation and footnote omitted.) *Kenney v. Henry Fischer Builder, Inc.* (1998), 129 Ohio App.3d 27, 32, 716 N.E.2d 1189. Accordingly, we join the other Ohio courts that have addressed this issue in holding that Cedar's claim for negligently conducting the title examination is barred in the absence of privity of contract. See *Kenney*, 129 Ohio App.3d at 32, 716 N.E.2d 1189; *James v. Partin*, 12th Dist. No. CA2001–11–086, 2002-Ohio-2602, 2002 WL 1058152, ¶ 19; *Valentine v. Willard & Assoc. Title Search Serv.*, 5th Dist. No. 01–CA–15, 2001-Ohio-4397, 2001 WL 733414, appeal dismissed as having been improvidently allowed, 96 Ohio St.3d 1216, 2002-Ohio-5308, 776 N.E.2d 106; *Shearer v. Echelberger* (Oct. 30, 2000), 5th Dist. No. 00–COA–01368, 2000 WL 1663626, at * 3–4; *Simmons v. Reiner* (Dec. 3, 1999), 5th Dist. No. 99CA8, 1999 Ohio App. LEXIS 5783, at * 13–14.

{¶ 24} In support of its motion for summary judgment, Commonwealth submitted the affidavit of Theodore Bush, its Vice President and Area Agency Manager. Bush's affidavit stated that Cedar and Commonwealth had no written, oral, or implied contract in place regarding the property or its subject matter. Commonwealth argued that no privity of contract between itself and Cedar could be demonstrated, and Commonwealth was therefore entitled to judgment as a matter of law pursuant to *Thomas*. Consequently, Commonwealth met its burden under *Dresher* by submitting evidence showing that there was no privity of contract that would support a claim against Commonwealth for errors in the title examination.

{¶ 25} In its memorandum in opposition to Commonwealth's motion for summary judgment, Cedar did not dispute the absence of a direct contractual relationship with Commonwealth. Rather, Cedar argued that Commonwealth could be held liable for Exchange's inaccurate title examination by the doctrines of apparent agency or agency by estoppel. Essentially, Cedar argued that Commonwealth held Exchange out to the public as its agent, and Commonwealth was therefore estopped from avoiding liability for the inaccurate title search performed by Exchange.

{¶ 26} We agree with the trial court that Cedar's response to Commonwealth's motion for summary judgment failed to sustain Cedar's reciprocal

burden under *Dresher* of showing the existence of a genuine issue of material fact for trial. A necessary predicate to liability under *Thomas* and its progeny is a showing of privity of contract. Cedar, however, failed to show that it had a contractual relationship with either Commonwealth or Exchange. In the absence of such a contractual relationship, Cedar's argument that Exchange was acting as Commonwealth's agent is an insufficient basis upon which to impose liability on Commonwealth.

{¶ 27} Until such time as the Ohio Supreme Court overrules *Thomas,* we are bound by the rule of law set forth therein. *Kenney,* 129 Ohio App.3d at 32, 716 N.E.2d 1189. Accordingly, we conclude that the trial court did not err in entering summary judgment in favor of Commonwealth.

## III

{¶ 28} Cedar's sole assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

BATCHELDER, J., concurs.

CARR, P.J., dissents.

BATCHELDER, Judge, concurring.

{¶ 29} I concur because *Thomas v. Guarantee Title & Trust Co.* (1910), 81 Ohio St. 432, 91 N.E. 183, remains precedential. However, an agency-principal analysis that would apply in any other insurance agent-company relationship would yield the opposite result.

CARR, Presiding Judge, dissenting.

{¶ 30} I respectfully dissent as I feel the Supreme Court has whittled away too many exceptions to the strict privity-of-contract requirement for the holding in *Thomas v. Guarantee Title & Trust Co.* (1910), 81 Ohio St. 432, 91 N.E. 183, to remain controlling. I would reverse.