CUYAHOGA COUNTY BAR ASSOCIATION *v.* HARDIMAN.

[Cite as *Cuyahoga Cty. Bar Assn. v. Hardiman,*
100 Ohio St.3d 260, 2003-Ohio-5596.]

(No. 2003–0421—Submitted June 24, 2003—Decided November 5, 2003.)

FRANCIS E. SWEENEY, SR., J.

{¶ 1} On August 12, 2002, relator, Cuyahoga County Bar Association, filed a complaint charging respondent, James L. Hardiman of Cleveland, Ohio, Attorney Registration No. 0031043, with several violations of the Code of Professional Responsibility in connection with his handling of two separate legal matters. Respondent answered, and relator filed an amended complaint on September 20, 2002. The matter was heard before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court on December 9, 2002.

{¶ 2} With respect to the first matter, the stipulations and evidence established that on June 26, 2001, Cory Moore met with respondent to discuss appealing an adverse Equal Employment Opportunity Commission ("EEOC") decision. At the meeting, respondent reviewed documentation and advised Moore about the steps necessary to investigate and prepare the appeal. Although no written fee

agreement was executed, Moore delivered $1,500 in cash to respondent's office on July 5, 2001. Moore was given a receipt by respondent's secretary. The funds were secured in respondent's office but were not deposited into a bank account.

{¶ 3} Subsequent to Moore's payment of the $1,500, respondent failed to communicate with him or do any work relating to his appeal. Moore contacted respondent's offices on September 11, 12, and 13, 2001, and sometime after September 24, 2001, the date by which the statute of limitations on his appeal had run. On each occasion, Moore spoke with a secretary, but respondent never returned any of his phone calls. Moore asked for a return of his money and documents. When they were not returned, Moore filed his complaint with the Certified Grievance Committee of the Cuyahoga County Bar Association. Respondent ultimately returned the funds to Moore by check dated January 9, 2002. Respondent testified before the panel that he had quoted Moore a fee of $3,500 to represent him in the appeal and that he did not believe that he had established an attorney-client relationship with Moore because Moore had not paid the entire retainer.

{¶ 4} As to the second matter, in May 2000, Tyrone White contacted respondent to represent him in a forcible entry and detainer action he had filed against one of his tenants. White then asked respondent to defend him against a counterclaim filed by the tenant. Respondent advised White that he would not represent him in the counterclaim without the payment of a retainer. Respondent nevertheless assisted White with the preparation of answers to interrogatories. Respondent also communicated with and received written correspondence from the tenant's attorney between June and September 2000. Neither respondent nor White appeared at trial. Judgment was entered against White. Respondent prepared a motion for relief from judgment for White. The parties stipulated that as a result of respondent's conduct and his limited participation in the action, respondent was aware or should have been aware that the court and opposing counsel believed that respondent was representing White. Nevertheless, respondent insists that he did not intend to be counsel of record in the action.

{¶ 5} With respect to the Moore matter, the panel found that respondent had violated DR 9–102(A)(2) (failing to deposit a client's retainer into an identifiable bank account). The panel found no violation of DR 6–101(A)(3) (neglecting an entrusted legal matter),[1] DR 7–101(A)(2) (failing to carry out a contract for employment), and DR 7–101(A)(3) (prejudicing a client during the course of a professional relationship). As to the White matter, the panel found that respondent had violated DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice). The panel recommended that respondent be given a

---

1. One member of the panel dissented and would have found a violation of DR 6–101(A)(3).

six-month suspension with the suspension stayed on the condition that no further disciplinary violations occur.

{¶ 6} The board adopted in part the findings, conclusions, and recommendation of the panel. While it agreed that respondent had violated DR 9–102(A)(2) in the Moore matter and DR 1–102(A)(5) in the White matter, it disagreed with the panel's ruling that no violation of DR 6–101(A)(3) had occurred in the Moore matter. The board adopted the panel's recommended sanction.

{¶ 7} We agree with the board's finding that respondent has violated DR 6–101(A)(3), DR 1–102(A)(5), and DR 9–102(A)(2).

{¶ 8} Our finding of a violation of DR 6–101(A)(3) (neglecting an entrusted legal matter) warrants further discussion. Clearly, an attorney's neglect or inattention to the handling of a client's legal affairs is subject to disciplinary action under DR 6–101(A)(3). We have previously held that a violation of DR 6–101(A)(3) occurs when an attorney fails to file necessary papers for a client, fails to answer a client's inquiries, fails to prosecute an action for a client, or mismanages probate proceedings or guardianships. *Disciplinary Counsel v. Ball* (1993), 67 Ohio St.3d 401, 403, 618 N.E.2d 159. Our prior decisions involving DR 6–101(A)(3), however, concerned neglect of legal matters after the establishment of an express attorney-client relationship. In the present case, the issue is whether an attorney can violate DR 6–101(A)(3) absent such relationship. For the reasons that follow, we answer affirmatively and hold that an attorney-client relationship need not be formed by an express written contract or by the full payment of a retainer. Instead, we hold that an attorney-client relationship may be created by implication based upon the conduct of the parties and the reasonable expectations of the person seeking representation.

{¶ 9} Respondent believes that no attorney-client relationship was formed with Moore because Moore provided him with only a partial payment of the requested $3,500 retainer. Moore, however, testified that respondent had never told him that he required a $3,500 retainer to begin working on his case. Instead, Moore was under the impression that the attorney-client relationship was established when respondent accepted the $1,500.

{¶ 10} Contrary to respondent's view, neither a formal contract nor the payment of a retainer is necessary to trigger the creation of the attorney-client relationship. See, e.g., *In re Disciplinary Action Against Giese* (N.D.2003), 662 N.W.2d 250. While it is true that an attorney-client relationship may be formed by the express terms of a contract, it "can also be formed by implication based on conduct of the lawyer and expectations of the client." Guttenburg & Snyder, The Law of Professional Responsibility in Ohio (1992) 62, Section 3.1. The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client. See, e.g., *Disciplinary Counsel v. Furth* (2001), 93 Ohio St.3d 173, 184, 754 N.E.2d 219, where we found, inter alia, a

violation of DR 6–101(A)(3) based upon the reasonable belief of the "client" that the respondent was representing him and his son in a legal matter.

{¶ 11} In this case, the evidence supports Moore's position that he reasonably believed that he had secured respondent's representation. After respondent reviewed documents at the initial meeting, respondent's office accepted Moore's partial retainer. On at least four separate dates, Moore attempted to make contact with respondent regarding his appeal. Rather than advise Moore that he did not intend to represent him until he had paid the full $3,500, respondent was silent. Due to his inaction, respondent jeopardized Moore's right to file a timely appeal. Based upon Moore's attempted communications, his partial payment, and respondent's knowledge of the legal subject matter, respondent had a duty to inform Moore that he would not perform any work on the matter until full payment was received. We find that under these circumstances, an implied attorney-client relationship was formed, and respondent was entrusted with a legal matter, which he neglected.

{¶ 12} To avoid violating the Disciplinary Rules, an attorney who is declining representation of a client until the full retainer is received should clarify that fact with the client. Clearly, the use of a written fee agreement is the preferred method of detailing the conditions of an attorney's representation. Had respondent memorialized the fee arrangement in a written instrument setting forth the obligations of the parties, including a statement that no work would be undertaken until Moore had paid a specific dollar amount, respondent might not be in the position that he finds himself in today and may have been able to exonerate himself from disciplinary action. Instead, under the facts presented, we are obliged to find that respondent violated DR 6–101(A)(3).

{¶ 13} We now turn to the board's finding that respondent was in violation of DR 9–102(A)(2) by not placing Moore's $1,500 payment into an IOLTA account. DR 9–102 mandates, "All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein * * *." Subsection (2) of this rule provides that funds belonging partially to the client and partially to the lawyer or firm must be deposited in such an account, but any portion that belongs to the lawyer or firm may be withdrawn when due, subject to certain exceptions not in play here. In the instant matter, when respondent received the funds from Moore, he placed them in an envelope in a safe in his office instead of placing them in an IOLTA account.

{¶ 14} DR 9–102(A) requires that all funds of a "client" be dealt with in accordance with the provisions of that rule. Thus, when in doubt as to whether an attorney-client relationship exists, the better practice is to err on the side of caution by placing the funds into an IOLTA account. Based upon our determina-

tion that Moore was respondent's client, respondent was required to place the partial retainer into an IOLTA account. We agree with the board that respondent violated DR 9–102(A)(2).

{¶ 15} The last alleged disciplinary violation relates to DR 1–102(A)(5) and stems from respondent's role in the lawsuit brought by White. We have previously held that an attorney violates this rule when he or she breaches his or her professional responsibility to deal fairly with the court and the client. *Cleveland Bar Assn. v. Cleary* (2001), 93 Ohio St.3d 191, 206, 754 N.E.2d 235. The evidence established that respondent assisted White with the preparation of interrogatories and communicated with opposing counsel. By acting in this manner, respondent clearly held himself out to be the attorney of record. In fact, respondent stipulated that he was aware or should have been aware that the court and opposing counsel believed that he was representing White. Under these circumstances, we agree with the board that respondent's conduct was prejudicial to the administration of justice.

{¶ 16} We now turn to a determination of the appropriate sanction for respondent's violations of DR 6–101(A)(3), DR 1–102(A)(5), and DR 9–102(A)(2). The board adopted the recommendation of the panel that respondent be suspended from the practice of law for a period of six months, with all six months stayed. In ordering this sanction, the board pointed to no aggravating circumstances surrounding respondent's conduct. In mitigation, it noted that respondent has been a member in good standing of the Ohio bar since 1968 with no prior disciplinary record. Respondent has participated over the years in a number of causes to further the profession and to better the community. He has served on the Supreme Court's Racial Fairness Implementation Task Force, was a board member and president of the Cleveland branch of the NAACP, and has performed pro bono work for indigent clients. This past and continuing service to the bar and community is to be weighed in respondent's favor.

{¶ 17} These mitigating factors do not undermine the seriousness of respondent's carelessness that led to the above violations. However, in taking these factors into consideration, we do not believe that respondent's actions rose to such a level that a stayed suspension from the practice of law is warranted. Instead, we find that a public reprimand is a proportional sanction for the misconduct involved.

{¶ 18} Accordingly, respondent is hereby publicly reprimanded for his misconduct in violation of DR 6–101(A)(3), DR 1–102(A)(5), and DR 9–102(A)(2). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

Ellen S. Mandell, for relator.

Davis, Williams & Co., L.P.A., and Donald C. Williams, for respondent.