DAVIS, Appellant,

v.

MONTENERY et al., Appellees.

[Cite as *Davis v. Montenery,* 173 Ohio App.3d 740, 2007-Ohio-6221.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

Nos. 06 JE 48 and 06 JE 51.

Decided Nov. 15, 2007.

David Delk, for appellant.

James Abrams, for appellee Matilda Montenery.

Kenneth Abbarno and Holly Wilson, for appellees Mario Busack, Mario Busack d.b.a. Busack Realty, and Michal Julian.

Charles Bean, for appellees Mark Thomas and Thomas Law Offices, L.L.C.

---

VUKOVICH, Judge.

{¶ 1} Plaintiff-appellant, Roger Davis Jr., appeals the decision of the Jefferson County Common Pleas Court granting summary judgment for defendants-appellees Matilda Montenery, Mario Busack, Busack Realty, Michal Julian, Mark Thomas, and Thomas Law Offices, L.L.C. The issue in this appeal is whether the trial court improperly granted summary judgment to appellees. For the reasons stated below, the grant of summary judgment to Matilda Montenery, Mario Busack, Busack Realty, and Michal Julian is hereby affirmed. The grant of summary judgment to Mark Thomas and Thomas Law Offices, L.L.C., is hereby reversed, and the cause is remanded for further proceedings consistent with law.

## STATEMENT OF FACTS

{¶ 2} Matilda Montenery and her husband ("the Montenerys") owned a large portion of land in Jefferson County, Ohio. Sometime in the early 1970s, they divided their land and sold a portion of it to Joseph and Margaret Smith ("the Smith property"). In doing so, the Montenerys retained 21 acres, which included a barn, located at 1212 County Road 16, Rayland, Jefferson County, Ohio ("the 1212 property"). They also retained an easement to use a part of the Smith property to access the barn located on the 1212 property; the Smith property contained a roadway that extended from County Road 16 to the barn. The language in the deed indicated that the easement could pass to the Montenerys' heirs and assigns.

{¶ 3} Not long after selling the property to the Smiths, the Montenerys, by recorded deed, released their ability to pass the easement to their assigns and heirs. The Montenerys only retained the right to use the easement for their life. Thus, when the Montenerys sold the 1212 property or when both of them died, which ever came first, the easement would expire.

{¶ 4} In 2001, Davis bought the 1212 property from Matilda Montenery (her husband was now deceased). Davis financed the transaction through Brach Banking & Trust Company ("BB & T"). Matilda listed the property through Busack Realty, owned by Mario Busack. Michal Julian was contracted by Busack Realty to show the 1212 property. Busack, Busack Realty, and Julian are referred to collectively as Busack Realty.

{¶ 5} Prior to entering into the sales contract, Davis wanted to know how to access the barn on the 1212 property, that is, if access could be obtained from the roadway on the Smiths' property. Julian asked Matilda and Matilda indicated that she had an easement to use the Smiths' roadway. Julian checked this information at the county recorder's office and found the first deed which granted an easement to use the roadway to access the barn. That deed included language which would allow the easement to be transferred to Matilda's assigns and heirs. Julian informed Davis of this information and gave him a copy of the deed. Julian, however, did not find the second deed which released the easement as to Matilda's assigns and heirs. Thus, Davis was not informed at that time that the right to use the roadway would expire upon conveyance of the land to him.

{¶ 6} Around this time, Mark Thomas and Thomas Law Offices, L.L.C. (collectively, "Thomas") were contacted by BB & T, the bank financing Davis's loan for the property. Thomas did title work on the property and purportedly found both deeds. At the time of doing the title work, Thomas was aware that the easement expired upon conveyance of the land. Davis was not informed prior to the purchase of the property about the release of the easement.

{¶ 7} From 2001 until 2004, Davis used the right of way until he received a letter from the Smiths' attorney indicating that the easement had expired upon Matilda's conveyance of the land to Davis and that he did not have the right to use the roadway. The Smiths requested that he immediately cease utilization of the roadway.

{¶ 8} Davis investigated the matter further and also contacted Thomas to investigate the matter. Thomas reviewed his notes and determined that the easement had expired. Thomas attempted to renegotiate the easement, but that attempt was futile.

{¶ 9} On June 13, 2005, Davis filed a complaint against Matilda, Busack Realty, and Thomas. Davis contended that had he known of the expired easement, he

would not have bought the land or he would have negotiated a lower sale price. The action against Matilda sounded in negligence, breach of contract, and fraud. The action against Busack Realty sounded in negligence, specifically negligent misrepresentation. The action against Thomas sounded in legal malpractice, negligence, and breach of contract. After discovery, all defendants filed motions for summary judgment. Davis opposed all three motions. On November 1, 2006, Thomas's motion for summary judgment was granted. On November 29, 2006, both the Busack Realty's and Matilda's motions for summary judgment were granted. Davis timely appeals from all three orders.

## STANDARD OF REVIEW

{¶ 10} All three assignments of error [1] presented raise an issue with the trial court's grant of summary judgment for each defendant. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 24. Summary judgment is properly granted when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

## SECOND ASSIGNMENT OF ERROR

{¶ 11} "The lower court erred by granting summary judgment to Mark Thomas and Thomas Law Offices."

{¶ 12} There are two distinct arguments presented under this assignment of error. The first argument is based upon attorney malpractice. The second is based upon Thomas's status as a title abstractor.

## A. ATTORNEY MALPRACTICE

{¶ 13} Davis contends that Thomas was his attorney and that he contacted Thomas for the purpose of ensuring that the easement would survive conveyance. Thomas counters that he was not Davis's attorney; rather, he represented BB & T. Thomas claims that he did title checks on the property to ensure that title was clear.

{¶ 14} In order to establish a cause of action for malpractice, a plaintiff must establish a tripartite showing: an attorney-client relationship giving rise to

---

1. The assignments are dealt with out of order because that is how Davis addressed them.

a duty, a breach of that duty, and damages proximately caused by the breach. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus, following *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058; see also *Holik v. Lafferty*, 11th Dist. No.2005–A–0005, 2006-Ohio-2652, 2006 WL 1459751. " 'Failure to prove any one of these elements entitles a defendant to summary judgment on a legal malpractice claim.' " *Belknap v. Vigorito*, 11th Dist. No. 2003–T–0147, 2004-Ohio-7232, 2004 WL 3090214, at ¶ 15, quoting *Brunstetter v. Keating*, 11th Dist. No. 2002–T–0057, 2003-Ohio-3270, 2003 WL 21437016, at ¶ 13; *Sprague v. Simon* (2001), 144 Ohio App.3d 437, 441, 760 N.E.2d 833.

{¶ 15} The element disputed in this case is whether an attorney-client relationship existed between Thomas and Davis. Without it, the legal-malpractice claim cannot survive.

{¶ 16} "[N]either a formal contract nor the payment of a retainer is necessary to trigger the creation of the attorney-client relationship. See, e.g., *In re Disciplinary Action Against Giese* (N.D.2003), 662 N.W.2d 250. While it is true that an attorney-client relationship may be formed by the express terms of a contract, it 'can also be formed by implication based on conduct of the lawyer and expectations of the client.' Guttenburg & Snyder, The Law of Professional Responsibility in Ohio (1992) 62, Section 3.1." *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, at ¶ 10.

{¶ 17} In deciding whether an attorney-client relationship exists, "the ultimate issue is whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." *Henry Filters, Inc. v. Peabody Barnes, Inc.* (1992), 82 Ohio App.3d 255, 261, 611 N.E.2d 873; see also *Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, at ¶ 10 ("The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client"); *Lillback v. Metro. Life Ins. Co.* (1994), 94 Ohio App.3d 100, 108, 640 N.E.2d 250; *David v. Schwarzwald, Robiner, Wolf & Rock Co., L.P.A.* (1992), 79 Ohio App.3d 786, 798, 607 N.E.2d 1173. Existence of an attorney-client relationship will vary from case to case. *Henry Filters, Inc.*, 82 Ohio App.3d at 261, 611 N.E.2d 873.

{¶ 18} Here, there was undisputedly no retainer or contract for services; however, as we have explained above, that is not needed to form the attorney-client relationship. *Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, at ¶ 10. It can be formed by the conduct of the lawyer and the expectations of the client. Id.

{¶ 19} Davis testified that Thomas was acting as his attorney, although he may not have contacted Thomas directly to represent him, because Davis told BB

& T that he wanted to use Thomas. He further stated that he "used Mark Thomas for almost all my real estate things." On previous occasions, Thomas had been involved in title examinations through BB & T where Davis was the borrower. On one of those occasions, Thomas had clearly represented Davis.

{¶ 20} Thomas contended, however, that during this transaction for the 1212 property, Davis was not his client; rather, his client was BB & T, the lender. He asserted that it was BB & T that requested that he do a title exam.

{¶ 21} That said, his title notes, which were admitted during his deposition, labeled Davis, not BB & T, as the client. Thomas, however, qualified the notes, indicating that they were generic and used for contacting purposes; it was not a true indication of who his client was.

{¶ 22} Consequently, considering all of the above, reasonable minds could differ as to whether or not there was an attorney-client relationship between Thomas and Davis for the 1212 property transaction. Thus, as to the first element of legal malpractice—attorney-client relationship—there is a genuine issue of material fact.

{¶ 23} As to the second and third elements of legal malpractice, breach of duty and damages, there is sufficient showing by Davis to overcome a motion for summary judgment. *Vahila*, 77 Ohio St.3d 421, 674 N.E.2d 1164. Davis testified that he told Thomas of his concerns with the easement, and Thomas assured him that they would survive upon conveyance. He even claims that Thomas told him at closing that the easement would transfer upon conveyance. Likewise, Davis indicated that had he known about the expiration of the easement, he would have negotiated a lower price or would not have bought the property. For all the above reasons, the grant of summary judgment for Thomas was in error.

## B.  ABSTRACTOR

{¶ 24} Davis also contends under this assignment of error that if there was not an attorney-client relationship formed, Thomas could still be liable on the basis that Thomas was a title abstractor. This argument is still addressed because the parties need to be aware whether a cause of action under title abstractor can be pursued if, on remand, an attorney-client relationship is not found.

{¶ 25} Davis admits that in *Thomas v. Guarantee Title & Trust Co.* (1910), 81 Ohio St. 432, 91 N.E. 183, the court stated that a title abstractor is liable only to the person who employed him. However, he cites cases that have called that holding into question. One such case is *Cedar Dev. Inc. v. Exchange Place Title Agency*, 149 Ohio App.3d 588, 2002-Ohio-5545, 778 N.E.2d 136.

{¶ 26} In *Cedar*, Cedar was selling a parcel of real estate to Akron Metropolitan Housing Authority ("AMHA"). The purchase agreement required Cedar to deliver title evidence to AMHA, which included a title report issued by Exchange Place Title Agency in the form of title insurance. Pursuant to that agreement, a commitment for title insurance was issued. However, the commitment listed clouds against the chain of title and stated that an action to quiet title would be necessary to eliminate the clouds. As a consequence, Cedar was unable to convey good title to AMHA on the intended date of closing. Thus, the closing and transfer of property were delayed.

{¶ 27} Later, it was determined that the clouds against the chain of title did not exist. Cedar contacted another title agency to complete the title. Cedar sued Exchange Place Title Agency, Inc., the title agency, and Commonwealth Land Title Insurance Company, the company that sold the title insurance, for the damages caused by the delay in closing and transfer of the property. The trial court granted summary judgment in favor of Commonwealth. Cedar dismissed the claims against Exchange.

{¶ 28} The Ninth Appellate District upheld the grant of summary judgment. It cited *Thomas* and explained that negligence in making or certifying an abstract of title does not sound in tort but is based in contract. 81 Ohio St. 432, 91 N.E. 183. Thus, privity must exist for liability to be found. Id.

{¶ 29} Cedar argued that the Ohio Supreme Court has rejected the strict privity requirement in the context of a malpractice action against an accountant brought by an investor who relied on the accountant's negligently prepared audits. *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. The Supreme Court reasoned that an accountant could be held liable to a third party for professional negligence when the third party is a member of a limited class whose reliance on the accountant's reputations is specifically foreseen. Cedar asserted that it was foreseeable that it would rely on Commonwealth's representation regarding the condition of the property's chain of title.

{¶ 30} The Ninth District explained that it was both reasonable and foreseeable that Cedar would rely on the title examination and representations in the commitment prepared by Commonwealth and/or Exchange. However, it went on to determine that it could not recognize such reliance as a substantial nexus that would overcome the privity requirement in the context of abstractor liability because such recognition would directly contradict the Ohio Supreme Court's holding in *Thomas*. Thus, as it had to follow the Ohio Supreme Court's decision, it affirmed the trial court's holding.

{¶ 31} Here, Davis is stating that Thomas, not as the attorney but as the title searcher, should be liable. As the Ninth District stated, while it may have been both reasonable and foreseeable that Davis would rely on any alleged assurances that Thomas made that the easement would survive conveyance, we are an intermediate court and therefore bound by the decision of *Thomas. Cedar*, 149 Ohio App.3d 588, 2002-Ohio-5545, 778 N.E.2d 136, ¶ 23. See also *Trustcorp. Mtge. Group v. Zajac*, 1st Dist. No. C–060119, 2006-Ohio-6621, 2006 WL 3690299, ¶ 21 (stating that the Ohio Supreme Court has declined to recognize the *Haddon View* tort-based economic-loss claims for malpractice in other profession in the absence of privity). Until *Thomas* is overruled or the Ohio Supreme Court has made an exception to the strict-privity-of-contract rule for abstractors, we are bound by *Thomas*. Id.

{¶ 32} In conclusion, the abstractor argument fails. Regardless, as stated above, the grant of summary judgment on the attorney-client relationship is vacated, and the cause is remanded for further proceedings consistent with the law. This assignment of error has some merit.

## FIRST ASSIGNMENT OF ERROR

{¶ 33} "The lower court erred by granting summary judgment to Matilda Montenery."

{¶ 34} The complaint against Matilda alleged that statements she made to Davis prior to and during the sale concerning the easement were false and fraudulent. It was claimed that her actions were negligent, intentional, fraudulent, and reckless. It was also claimed that any actions of the Busack Realty were attributable to Montenery because they acted as her agent.

{¶ 35} Montenery did not file a brief in this case. However, in her motion for summary judgment, she stated that the testimony and evidence shows that Montenery never made any representations directly to Davis and the representations she did make to her agent, Busack Realty, specifically Julian, did not concern whether the easement would survive conveyance but stated only the easement existed at that time.

{¶ 36} Davis admits and the evidence clearly discloses that Montenery never spoke directly to Davis and did not state to him that the easement would survive conveyance. That said, the record also clearly disclosed that Busack Realty represented Montenery—they were her realty company. It is also undisputed that Julian, working for Busack Realty, gave Davis a deed that showed that the easement would survive conveyance. Furthermore, it is clear that Julian did not find the later deed that indicated that the easement was changed from being

transferable to Montenery's assigns and heirs to being only an easement for her use and lifetime that was not transferable to heirs or assigns.

{¶ 37} Julian's testimony concerning what was told to her by Montenery is as follows:

{¶ 38} "Q. When you asked Ms. Montenery—when the easement was discussed with Ms. Montenery, you testified that your question was, 'How do you get back to the barn?' Is that correct?

{¶ 39} "A. Correct.

{¶ 40} "Q. And her answer was, 'I have an easement'?

{¶ 41} "A. That's correct, yes. She actually indicated—she pointed to the road, the roadway, and said, 'That is Mr. Smith's road, and I have an easement to get back to the barn.'

{¶ 42} "Q. And that was true; she did have an easement. Isn't that correct?

{¶ 43} "A. Yes.

{¶ 44} "Q. Did you ask her if she had an easement to convey to a potential buyer?

{¶ 45} "A. No.

{¶ 46} "Mr. Abrams: Thank you very much. I have nothing further.

{¶ 47} "Examination By Mr. Delk:

{¶ 48} "Q. Just a follow-up. In your discussions with Ms. Montenery, did you present the easement question to her in such a way that it would be clear that, 'Is this easement going to survive the closing'?

{¶ 49} "A. No, I did not ask it in that manner. I asked how you get back to the barn.

{¶ 50} "Q. Okay. But when you called her after the fact, later she said, 'I didn't know it was extinguished.'?

{¶ 51} "A. That's correct, but that was several years later.

{¶ 52} "Q. I understand. Okay."

{¶ 53} Given those facts, her actions cannot amount to fraud. Fraud consists of "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Groob v. KeyBank,* 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d

1170, ¶ 47, quoting *Gaines v. Preterm–Cleveland Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709. There is no evidence to indicate that Montenery ever made any representation that the easement would survive the conveyance.

{¶ 54} Furthermore, any possible oral concealment of the validity of the easement by Montenery did not amount to fraud. *Patton v. Ditmyer*, 4th Dist. Nos. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107, 2006 WL 3896780, ¶ 41–42 ("When any adversities regarding title to property are of public record and therefore easily discoverable, the purchaser of the property is not entitled to rely upon the seller's alleged misrepresentations"). Courts have routinely dismissed, as a matter of law, fraud and misrepresentation claims related to land size or lot boundaries when the true size or boundaries are readily discoverable or otherwise made known to the purchasers during the transaction. Id., citing *Parahoo v. Mancini* (Apr. 14, 1998), 10th Dist. No. 97APE08–1071, 1998 WL 180539 (explaining caveat-emptor-barred claims when the title was public record and therefore easily discoverable and the seller did not engage in affirmative misrepresentation or concealment so reprehensible in nature as to constitute fraud), *Van Horn v. Peoples Banking Co.* (1990), 64 Ohio App.3d 745, 747, 582 N.E.2d 1099; *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 91, 18 OBR 403, 481 N.E.2d 1193; and *Ralston v. Grinder* (1966), 8 Ohio App.2d 208, 37 O.O.2d 213, 221 N.E.2d 602. Thus, there was no evidence that Montenery's oral statement amounted to fraud.

{¶ 55} Similarly, Julian's actions as the agent for Montenery would also not amount to fraud causing Montenery to be liable for fraud. As stated above, Julian admits that Montenery never indicated to her that the easement would survive conveyance. Julian, however, did do a search at the courthouse to determine whether Montenery was correct about having an easement. Julian's search at the courthouse revealed that Montenery did have an easement. Julian showed that deed containing the easement to Davis. However, Julian's search was not complete. She did not find the second deed that extinguished the ability to assign the easement. Her actions at most amounted to negligence for negligent misrepresentation.

{¶ 56} Thus, the question then arises whether the possible negligent misrepresentation of Julian rendered Montenery liable. The answer is yes; a principal is liable for negligent or intentional misrepresentations made by his agent, made within the course and scope of his agency. *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 65, 7 OBR 76, 454 N.E.2d 158. Thus, for purposes of negligent misrepresentation, the only cause of action that Montenery could be liable under, the determination of whether Montenery is liable to Davis, is dependent on whether Busack Realty is liable. The third assignment of error addresses this issue.

## THIRD ASSIGNMENT OF ERROR

{¶ 57} "The lower court erred by granting summary judgment to Mario Busack, Busack Realty and Michal Julian."

{¶ 58} The claims against Busack Realty were for negligent misrepresentation. One commits negligent misrepresentation when "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, [he] supplies false information for the guidance of others in their business transactions, [and he] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835.

{¶ 59} Thus, in order to prevail on this cause of action, Davis was required to present a genuine issue of material fact as to whether Busack Realty exercised reasonable care in obtaining the information that the easement would transfer with the sale of the property. Furthermore, there must be a genuine issue of material fact that Davis justifiably relied upon that information. This analysis can be divided into two parts: justifiable reliance and failure to exercise reasonable care in obtaining the information regarding the easement.

{¶ 60} Our analysis will begin with·the justifiable-reliance element. Establishing justifiable reliance does not require a showing that the plaintiff's reliance conformed to what a "reasonable man" would have believed. *Amerifirst Sav. Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468, 496, 737 N.E.2d 68. Rather, a determination regarding justifiable reliance involves a fact-based inquiry into the circumstances of the claim and the relationship between the parties. *Lepera v. Fuson* (1992), 83 Ohio App.3d 17, 26, 613 N.E.2d 1060. Typically, "a buyer should be able to reasonably rely upon the representations of a real estate agent." *Buchanan v. Geneva Chervenic Realty* (1996), 115 Ohio App.3d 250, 258, 685 N.E.2d 265. However, that rule is not immutable. See id. For example, when buyers continue to investigate possible problems on their own and look to others, such as inspectors' and electricians' representations, the buyers are not justifiably relying on the agent's representations regarding those possible problems. *Christian v. McLaughlin* (Dec. 30, 1998), 9th Dist. No. 19064, 1999 WL 1579. Thus, in those situations, the agent could not be liable for negligent misrepresentation.

{¶ 61} Here, evidence does indicate that Julian obtained information from Montenery that Montenery had an easement to use Smith's driveway. It also shows that Julian found a recorded deed indicating such an easement. Julian did

not, however, find the recorded deed that limited that easement to Montenery and would not transfer upon sale.

{¶ 62} Davis contends that he relied upon the information provided by Julian. However, statements made during his deposition do not support such a contention.

{¶ 63} "Q. And what did she tell you about the easement?

{¶ 64} "A. [Davis]. That she [Julian] was told the easement existed by her client so then she provided me a copy of an easement.

{¶ 65} "Q. Was that the easement that I showed you that's recorded in Volume 505, Page 515?

{¶ 66} "A. I believe so. I believe that's it.

{¶ 67} "Q. I don't have it but I think that's—

{¶ 68} "A. I think that's the right numbers.

{¶ 69} "Q. Right.

{¶ 70} " A. Uh-huh.

{¶ 71} "Q. Did you rely on that representation of Michal Julian?

{¶ 72} "A. No. I went to Mark [Thomas] on that."

{¶ 73} As can be seen above, Davis clearly admits that he did not rely on Julian's and Busack Realty's representation regarding the validity and continued existence of the easement after conveyance. Furthermore, he clearly indicates that he was doing his own investigation on the validity of the easement through Thomas, an attorney who does title work. Consequently, Davis's admission and indication, even when viewed in the light most favorable to him, could only lead a reasonable person to believe that he did not justifiably rely on Julian's and Busack Realty's representation.

{¶ 74} Thus, as there is no showing of justifiable reliance, the cause of action for negligent misrepresentation fails. There is no need for this court to examine whether Busack Realty failed to exercise reasonable care in obtaining the information regarding the easement (the other element of negligent misrepresentation).

{¶ 75} Hence, summary judgment was appropriately granted for Busack Realty. Likewise, summary judgment was also appropriately granted for Montenery since the representations made by her agent were not justifiably relied upon. This assignment of error and the first assignment (dealing with Montenery) of error lack merit.

## CONCLUSION

{¶ 76} For the above stated reasons, the grant of summary judgment for Mario Busack, Busack Realty, and Michal Julian is hereby affirmed. The grant of summary judgment for Matilda Montenery is also affirmed. However, the grant of summary judgment for Thomas and Thomas Law Offices, L.L.C., is reversed. There exists a genuine issue of material fact as to whether an attorney-client relationship existed between Thomas and Davis. Thus, the cause is remanded to the trial court for further proceedings according to law and consistent with this court's opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DeGENARO, P.J., and WAITE, J., concur.